UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARK W. CRAIG,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | CASE NO. C07-1308-RSL<br><br>REPORT AND RECOMMENDATION<br>RE: SOCIAL SECURITY<br>DISABILITY APPEAL |

Plaintiff Mark W. Craig proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance (DI) and Supplemental Security Income (SSI) benefits after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, it is recommended that this matter be REMANDED for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1955.[1] He completed high school and two years of college.

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01 (AR 85, 282.) Plaintiff previously worked as a paddle maker, janitor, shipping/receiving clerk,

02 cabinet door maker, lift assembler, electronic assembler, and cafeteria worker. (AR 280, 294-95.)

03       Plaintiff filed DI and SSI applications in June 2004, alleging disability beginning October

04 15, 2003 due to pre-diabetes, sleep apnea, high blood pressure, and a heart bypass. (AR 71-73,

05 79, 216-18.) His applications were denied at the initial level and on reconsideration, and he timely

06 requested a hearing.

07       ALJ Marguerite Schellentrager convened a hearing on April 26, 2006, but continued the

08 hearing to allow plaintiff to obtain representation. (AR 235-48.) The ALJ held a second hearing

09 on July 19, 2006, taking testimony from plaintiff, his father Robert Craig, and vocational expert

10 William Weiss. (AR 249-301.) On September 26, 2006, the ALJ issued a decision finding plaintiff

11 not disabled. (AR 15-23.)

12       Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on

13 June 28, 2007 (AR 5-9), making the ALJ's decision the final decision of the Commissioner.

14 Plaintiff appealed this final decision of the Commissioner to this Court.

15 **JURISDICTION**

16       The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

17 **DISCUSSION**

18       The Commissioner follows a five-step sequential evaluation process for determining

19 whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must

20 be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not

21 ───────────────────────────

22 official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

engaged in substantial gainful activity since his alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's cardiac impairment status post coronary artery bypass grafting, diabetes, hypertension, hyperlipidemia, and obesity severe. The ALJ concluded there was "no objective evidence to support the claimant's allegations of severe sleep apnea, carpal tunnel syndrome, psoriasis, or a severe impairment that could reasonably produce symptoms of severe fatigue and tingling and numbness in the legs and feet." (AR 18.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria for any listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff capable of sedentary work, with the ability to occasionally and frequently lift and carry ten pounds,[2] to stand at least two hours in an eight-hour workday, to walk at least two hours in an eight-hour workday, and to sit about six hours in an eight-hour workday. The ALJ determined that plaintiff was not able to perform his past relevant work. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Relying on the testimony of the vocational expert, the ALJ concluded plaintiff had acquired transferable work skills from past relevant work that enabled him to work in jobs existing

---

[2] This appears to be a typographical error. The ALJ likely intended to find plaintiff capable of lifting and carrying twenty pounds occasionally and ten pounds frequently.

01 in significant numbers, including work as an industrial order clerk.

02 This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

10 Plaintiff argues that the Appeals Council erred in failing to reverse the ALJ's decision after receiving the results of a sleep study conducted after the ALJ's decision and that the ALJ erred in failing to recontact his physician regarding a diagnosis of carpal tunnel syndrome. He requests remand for further administrative proceedings. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

<u>Appeals Council Evidence</u>

16 Plaintiff argues that the decision should be reversed based on the results of a sleep study submitted to the Appeals Council. That study, as discussed below, addressed plaintiff's sleep apnea.

19 On September 30, 2003, Dr. James Sheahan assessed plaintiff with "[o]bstructive sleep apnea, probably severe by physical examination and history." (AR 168 (also stating: "He states that he is chronically tired. . . . He falls asleep immediately but tosses and turns through the night. He is a very fitful sleeper with his bed very messed up. He occasionally may stop breathing, but

01 he is not sure. He wakes up in the morning with headaches, dry mouth. . . . He is always sleepy

02 during the day and can fall asleep no matter how long he slept during the night, he will feel sleepy

03 and tired during the daytime.")) Dr. Sheahan recommended a referral for a sleep study. (*Id*.) A

04 note from Dr. Victoria Clyne on July 8, 2004 indicated that plaintiff lost his insurance and had not

05 undergone a sleep study. (AR 167.) Dr. Clyne also recommended a sleep study. (*Id*.)

06 Additionally, in a June 23, 2004 State agency physical evaluation, certified physician's assistant

07 (PA-C) Jin Liang Guo recommended a sleep study. (AR 152, 154.)

08       The ALJ addressed the absence of a sleep study during the July 2006 hearing. Plaintiff

09 testified that he had not been able to undergo a sleep test because he did not have a phone at

10 which he could be reached. (AR 254-55.) He explained that, because he uses "medical coupons,"

11 the sleep study referral would only call him with brief advance notice as to when he could come

12 in, but that he did not have a "reliable" message phone or a neighbor who could take such a call

13 for him. (*Id*.)

14       The ALJ found "no objective medical evidence to support [plaintiff's] allegations of severe

15 sleep apnea . . . or a severe impairment that could reasonably produce symptoms of severe

16 fatigue[.]" (AR 18.) The ALJ stated: "Specifically, the records do not contain a firm diagnosis of

17 sleep apnea. This is the suspected cause of his fatigue but this also was never confirmed by any

18 objective medical evidence." (AR 18.) The ALJ stated generally with respect to all of the

19 impairments deemed not severe that "[n]o physician has opined that these conditions restrict his

20 function or activity[,]" and that "[t]hese conditions have been of short duration, controllable, and

21 without significant effect on his ability to perform work activities." (AR 18-19.) The ALJ also

22 addressed plaintiff's fatigue in the credibility assessment, finding that, despite his assertion of

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01 fatigue-associated limitations, plaintiff was able to engage in a variety of activities. (*See* AR 20.)

02 Plaintiff underwent a sleep study on December 30, 2006, three months after the ALJ's

03 decision. (AR 233-34.) On March 27, 2007, Dr. Sridar Chalaka indicated that the sleep study

04 revealed "[m]oderate-to-severe obstructive sleep apnea syndrome[]" and "[p]ossible periodic limb

05 movement disorder." (AR 232.) Dr. Sridar noted that a prescription for Ambien had not been

06 working well "as he is waking up in the middle of the night and having difficulty falling asleep."

07 (*Id.*)

08 Plaintiff submitted the sleep study results and Dr. Chalaka's report to the Appeals Council.

09 The Appeals Council considered that evidence as follows:

10/11/12 > This information indicates you underwent a sleep study which indicates you had difficulty maintaining sleep and that you exhibited respiratory events with arousals and some desaturations. This evidence is new; however, it does not contain any new clinical or laboratory records which would warrant a change in the Administrative Law Judge's decision. The Administrative Law Judge's decision is supported by the weight of the evidence.

13

14 (AR 6.)

15 Plaintiff argues that the Appeals Council erred in considering the new evidence. He asserts

16 that the sleep study is objective medical evidence that he suffers from moderate-to-severe

17 obstructive sleep apnea and confirmed Dr. Sheahan's September 2003 diagnosis. Plaintiff notes

18 that, "[o]nce the claimant produces medical evidence of an underlying impairment, the

19 Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely

20 because they are unsupported by objective medical evidence." *Reddick v. Chater*, 157 F.3d 715,

21 722 (9th Cir. 1998) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991)). He also

22 points to the Social Security Administration's acknowledgment that sleep apnea "can lead to

01 drowsiness and lack of mental clarity during the day[,]" and that fatigue resulting from sleep apnea

02 "may affect the individual's physical and mental ability to sustain work activity." Social Security

03 Ruling (SSR) 02-1p (2000 WL 628049 at *6). Plaintiff argues that, if in possession of the sleep

04 study results, the ALJ would have been required to consider both his and his father's testimony

05 regarding his severe fatigue.

06     Plaintiff maintains that, in light of the sleep study, there is a reasonable possibility the ALJ

07 would have ruled in his favor because the severity of his fatigue precluded him from working in

08 any position on a sustained basis. *See* SSR 96-8p ("Ordinarily, RFC is the individual's maximum

09 remaining ability to do sustained work activities in an ordinary work setting on a regular and

10 continuing basis. . . . A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or

11 an equivalent work schedule.") (1996 WL 374184 at *2). *See also Booz v. Secretary of Health*

12 *& Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984) (remand based on new and material

13 evidence is appropriate where there is a reasonable possibility it would have changed the outcome

14 of the ALJ's decision) and *Wainwright v. Secretary of Health & Human Servs.*, 939 F.2d 680,

15 682-83 (9th Cir. 1991) (concluding that, because a new MRI scan may provide a medical basis for

16 the claimant's allegations, it had a reasonable possibility of changing the ALJ's decision). He

17 notes his testimony and the testimony of his father that his last job ended because his fatigue and

18 inability to wake up led to multiple absences (AR 259-60, 285), as well as their testimony as to

19 his fatigue and sleeping problems generally (AR 270-71, 284-85). Plaintiff also points to the

20 information concerning his sleep and fatigue in Dr. Sheahan's report. (AR 168.) Plaintiff asserts

21 that, had the ALJ been presented with the sleep study, she could not have simply rejected his

22 testimony based on the absence of objective medical evidence to support the allegations.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

The Commissioner asserts that, while a reviewing court may consider evidence submitted to the Appeals Council in determining whether an ALJ's decision is supported by substantial evidence and free of legal error, *Ramirez v. Shalala*, 8 F.3d 1449, 1451-52 (9th Cir. 1993), it lacks jurisdiction to consider an Appeals Council's denial of review. *See*, *e.g.*, 20 C.F.R. §§ 404.981, 416.1481 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised."); *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001) ("No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review.") The Commissioner agrees with plaintiff that a remand should only occur where there is a reasonable possibility the new evidence would change the outcome of the ALJ's determination. *See Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984).

The Commissioner first argues that the new evidence at issue here does not support a finding of disability during the time period under consideration – from the October 15, 2003 alleged onset date to the September 26, 2006 decision by the ALJ. That is, the Commissioner maintains that the sleep study relates only to plaintiff's condition at the time the study was conducted and Dr. Chalaka's report only to the time that report was written. The Commissioner asserts that, at best, the evidence may support a new claim.

The Commissioner next argues that the evidence does not support a finding that the ALJ's determination would be different. The Commissioner notes that, despite the absence of a formal diagnosis, the ALJ still considered plaintiff's complaints of fatigue:

> Although he claims that he is unable to exercise or work due to extreme fatigue, he

is able to cook, clean his mobile home, do laundry, care for his cat, tend to his indoor and outdoor plants, mow his lawn, go grocery and clothes shopping, walk to a nearby store for the daily newspaper, ride the bus, and go to the library with his father. He enjoys reading, watching television, playing video games, and visiting with others via the telephone at least once a week. He alleges poor attention but admits that it "depends on how boring it is". These activities, limited by fatigue, were confirmed by the lay witness testimony by the claimant's father, Robert Craig. However, his testimony does not suggest an ultimate conclusion of disability. The claimant's activities, while not directly in correlation with work activities, do indicate a capacity to engage in exertional activities consistent with assessed abilities. It is apparent that the claimant is engaging in a normal level of daily activity, social interaction, and activities that require concentration.

(AR 20; internal citations to record and case law omitted.) The Commissioner maintains that the ALJ appropriately considered plaintiff's level of activity as inconsistent with his alleged limitations. The Commissioner adds that State agency reviewing physicians took note of the sleep apnea evidence in the record, but found plaintiff capable of light work (AR 186-87) – a finding the ALJ did not accept, instead agreeing with PA-C Guo that plaintiff was capable of only sedentary work (AR 21).

In reply, plaintiff asserts that the Commissioner's first argument ignores the totality of the evidence in this case. With respect to the second argument, plaintiff asserts that the Commissioner's claim that the ALJ already fully considered his fatigue is inconsistent with the ALJ's explicit finding that he did not have severe sleep apnea or another medical condition that could cause severe fatigue. Plaintiff also criticizes the ALJ's reliance on his basic daily activities, noting the recognition of the Ninth Circuit Court of Appeals that "[o]ne does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not

01 in any way detract from her credibility as to her overall disability.") (quoting *Fair v. Bowen*, 885

02 F.2d 597, 603 (9th Cir. 1989)).  Plaintiff asserts the absence of evidence indicating that his

03 performance of any of the activities cited by the ALJ on a sustained basis would contradict or

04 discredit his or his father's testimony.  (*See*, *e.g.*, AR 263-64 (plaintiff testified that he only had

05 to care for a couple of indoor plants and outside rose bushes, and that it took him three or four

06 days to finish mowing his "postage stamp lawn").)

07       In asserting the standard as to a "reasonable possibility" of changing the ALJ's

08 determination, both plaintiff and defendant rely on cases relating to "sentence six" of 42 U.S.C.

09 § 405(g), which states that "[t]he court . . . may at any time order additional evidence to be taken

10 before the Commissioner . . . , but only upon a showing that there is new evidence which is

11 material and that there is good cause for the failure to incorporate such evidence into the record

12 in a prior proceeding[.]"  *See Wainwright*, 939 F.2d at 582-83, and *Burton*, 724 F.2d at 1417.  As

13 this Court has previously indicated, Ninth Circuit case law clearly supports the proposition that

14 evidence submitted to the Appeals Council becomes part of the administrative record for the

15 purposes of this Court's review, *see Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000);

16 *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996); *Ramirez*, 8 F.3d at 1451-52, and that a

17 plaintiff need not show such evidence is material and that there is good cause for the failure to

18 incorporate it into the record previously.  Instead, such evidence is reviewed pursuant to "sentence

19 four" of 42 U.S.C. § 405(g):  "The court shall have power to enter, upon the pleadings and

20 transcript of the record, a judgment affirming, modifying, or reversing the decision of the

21 Commissioner of Social Security, with or without remanding the cause for a rehearing."   *See*

22 *Anderson v. Barnhart*, No. C02-2174-RSL, slip op. at 1-3 (W.D. Wash. Nov. 21, 2003) (citing

*Harman*, 211 F.3d at 1180-81) (Dkt. 26) and *Ramel v. Barnhart*, No. C05-1913-RSL-MAT, slip op. at 11-14 (W.D. Wash. Aug. 4, 2006) (Dkt. 18) (discussing relevant case law in detail and concluding that Ninth Circuit case law, including *Ramirez* and *Harman*, implicitly allows for consideration of Appeals Council evidence pursuant to sentence four of 42 U.S.C. § 405(g), which does not require the showing of good cause and materiality required by sentence six of that statute).

        Also, while the Commissioner maintains that the Court lacks jurisdiction to review the Appeals Council's denial of review, the Ninth Circuit clearly assumed such jurisdiction in *Ramirez*. *See* 8 F.3d at 1454-55 (finding that the Appeals Council erred in failing to find that the plaintiff met the requirements of a listing). While this Court may not be bound by such an assumption, *see, e.g.*, *Sorenson v. Mink*, 239 F.3d 1140, 1149 (9th Cir. 2001) ("'[U]nstated assumptions on non-litigated issues are not precedential holdings binding future decisions.'") (quoted source omitted); *Estate of Magnin v. Commissioner*, 184 F.3d 1074, 1077 (9th Cir. 1999) ("When a case assumes a point without discussion, the case does not bind future panels."), the Commissioner fails to identify any binding precedential authority upon which this Court could rely to support his position.

        Now, the Court must determine whether there is substantial evidence to support the ALJ's decision even taking the sleep study and Dr. Chalaka's report into consideration. The Commissioner's first argument is not compelling. Plaintiff underwent the sleep study in fairly close proximity to the ALJ's decision and there is sufficient evidence in the record to tie it to the relevant time period. As reflected above, plaintiff raised his problems with sleeping and fatigue with Dr. Sheahan, and Dr. Sheahan and other physicians recommended a sleep study. The record

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01  contains an explanation for why plaintiff had not completed that sleep study earlier. For these
02  reasons, the date of the study alone does not undermine its relevance.
03  Nor does the Commissioner's second argument withstand scrutiny. Contrary to the finding
04  of the ALJ and contention of the Commissioner, the record does contain a formal diagnosis of
05  sleep apnea. Dr. Sheahan explicitly assessed plaintiff with obstructive sleep apnea during his
06  September 30, 2003 examination. (AR 168.) Further, although he had not yet obtained the results
07  of a sleep study, Dr. Sheahan's report contains objective support for the diagnosis. Dr. Sheahan
08  determined that the sleep apnea was "probably severe *by physical examination* and history." (*Id*.;
09  emphasis added.) He took specific note of plaintiff's "bull neck[,] . . . significant visceral obesity[,
10  and] . . . very enlarged tongue, making it impossible to see his airway." (*Id*.)    Additionally,
11  while the ALJ relies on the fact that no physician opined that this or other conditions restricted
12  plaintiff's function or activity (AR 18, 21), she took no steps to obtain further information from
13  plaintiff's treating physicians, including Dr. Sheahan. An ALJ has an obligation to recontact a
14  treating physician or psychologist when the evidence received is inadequate for a determination
15  of disability. 20 C.F.R. §§ 404.1512(e), 416.912(e) ("When the evidence we receive from your
16  treating physician or psychologist or other medical source is inadequate for us to determine
17  whether you are disabled, we will need additional information to reach a determination or a
18  decision.") *See also Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) ("[T]he ALJ
19  should not be 'a mere umpire' during disability proceedings. Rather, the ALJ has 'a special duty
20  to fully and fairly develop the record and to assure that the claimant's interests are considered.'")
21  (quoted sources omitted). The "ALJ's duty to develop the record further is triggered only when
22  there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoted source omitted). In this case, because the ALJ apparently found Dr. Sheahan's diagnosis and opinions as to plaintiff's sleep apnea ambiguous and/or inadequate, he should have contacted him for clarification and specifically inquired into whether Dr. Sheahan felt this condition resulted in any limitations.

Finally, in contrast to the finding of the Appeals Council, the undersigned concludes that the sleep study and Dr. Chalaka's report does contain new clinical or laboratory records which could warrant a change in the ALJ's decision. Of course, the sleep apnea itself would not prevent plaintiff from working; rather, the issue is the associated fatigue and its affect on plaintiff's ability to work. As asserted by the Commissioner, the ALJ did consider plaintiff's fatigue – as alleged by both plaintiff and his father – in the credibility assessment, concluding that plaintiff's "activities, while not directly in correlation with work activities, do indicate a capacity to engage in exertional activities consistent with assessed abilities." (AR 20; cited cases omitted.) However, the activities identified by the ALJ are not necessarily inconsistent with sleep apnea-associated fatigue. Moreover, in assessing plaintiff's fatigue, the ALJ started with a presumption that plaintiff's sleep apnea was not severe. That presumption was based on an inaccurate conclusion that there was no formal diagnosis or supporting objective evidence of sleep apnea, could have been dispelled with clarification from plaintiff's treating physician, and presumably would not have existed had the ALJ had access to the results of the sleep study and Dr. Chalaka's report.

In sum, the undersigned concludes that the question of plaintiff's sleep apnea and the

evidence submitted to the Appeals Council on this issue warrant further administrative proceedings. On remand, the ALJ should reassess plaintiff's sleep apnea beginning at step two and should contact Dr. Sheahan or other treating physicians for further information concerning this condition and any associated limitations.

Carpal Tunnel Syndrome

Plaintiff also argues that the ALJ erred in failing to recontact his doctor, Dr. Joanna Minasian, regarding a diagnosis of carpal tunnel syndrome. The ALJ stated at step two with respect to this impairment: "There is no EMG/nerve conduction evidence to support severe carpal tunnel syndrome. The treating physician gave the claimant 'wrist splints' and noted that he was not a surgical candidate." (AR 19; citing AR 193.) She also generally noted, as reflected above, that there was no objective medical evidence to support this or other impairments deemed non-severe, that "[n]o physician has opined that these conditions restrict [plaintiff's] function or activity[,]" and that "[t]hese conditions have been of short duration, controllable, and without significant effect on his ability to perform work activities." (AR 18-19.)

Plaintiff contends that, before rejecting this claim at step two, the ALJ should have contacted Dr. Minasian to determine what, if any, clinical observations or tests she performed to support her diagnosis and treatment recommendation. *See*, *e.g.*, *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (ALJ has an affirmative duty to supplement the medical record, to the extent incomplete, before rejecting the claim at step two). Plaintiff asserts that the failure to contact Dr. Minasian was not harmless error. He notes that the vocational expert testified that the industrial order clerk position – the position identified by the ALJ at step five (*see* AR 22) – requires frequent handling and reaching, and occasional fingering, and that an individual incapable of

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01  frequent handling and fingering could not perform that job. (AR 298, 300.) Plaintiff argues that
02  Dr. Minasian's carpal tunnel diagnosis and recommendation that he use wrist splints, as well as
03  his own testimony regarding his problems with his hands, cast serious doubt on his ability to
04  perform the identified job.

05  The Commissioner maintains that plaintiff improperly seeks to shift the burden of proof
06  at step two. He notes that, as stated above, an ALJ need only recontact medical sources where
07  the evidence is ambiguous or insufficient as a whole to determine disability. 20 C.F.R. §§
08  404.1512(e), 416.912(e).  *See also Bayliss*, 427 F.3d at 1217 (ALJ had no duty to recontact
09  physicians where ALJ found record adequate to make a finding regarding disability). The
10  Commissioner further argues that, even accepting carpal tunnel syndrome as a severe impairment,
11  there was no credible evidence that indicated this impairment limited plaintiff's functioning to any
12  greater degree than found in the RFC assessment. In support, the ALJ points to the variety of
13  reasons offered by the ALJ for finding plaintiff less than fully credible. (*See* AR 20-21.)

14  In reply, plaintiff notes that the applicable regulations impose the duty to recontact a
15  physician, not only where there is a conflict or ambiguity, but also where a report "does not
16  contain all the necessary information, or does not appear to be based on medically acceptable
17  clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(e), 416.912(e). He avers
18  that, here, the ALJ rejected the diagnosis because she did not believe it was based on medically
19  acceptable clinical and laboratory diagnostic techniques. He rejects the contention that any error
20  was harmless, again noting the vocational expert's testimony as to the requirements of the
21  identified job. Plaintiff also points to his testimony that he experiences tingling and numbness in
22  his hands and difficulty holding things and picking up small things, and that he had to stop playing

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01 video games because of this problem, as well as his father's testimony that he had difficulty

02 opening jar lids or twist tops. (AR 269-70, 274, 287.) He asserts that the ALJ failed to provide

03 clear and convincing reasons for rejecting this testimony.

04 At step two, a claimant must make a threshold showing that his medically determinable

05 impairments significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*,

06 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities"

07 refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b),

08 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the

09 evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's

10 ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting SSR 85-28).

11 "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id*.

12 (citing *Bowen*, 482 U.S. at 153-54). An ALJ is also required to consider the "combined effect"

13 of an individual's impairments in considering severity. *Id*.

14 As noted above, an ALJ has an obligation to recontact a treating physician or psychologist

15 when the evidence received is ambiguous or inadequate for a determination of disability. 20

16 C.F.R. §§ 404.1512(e), 416.912(e); *Mayes*, 276 F.3d at 459-60; *Tonapetyan*, 242 F.3d at 1150.

17 The applicable regulations note, as asserted by plaintiff, that additional evidence or clarification

18 is sought when a medical source's report "contains a conflict or ambiguity that must be resolved,

19 . . . does not contain all the necessary information, or does not appear to be based on medically

20 acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(e)(1),

21 416.912(e)(1).

22 In this case, in noting the absence of EMG/nerve conduction evidence, the ALJ appeared

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01 to conclude that Dr. Minasian's diagnosis of carpal tunnel syndrome was not based on acceptable
02 diagnostic techniques. As argued by plaintiff, the ALJ should have contacted this treating
03 physician for clarification as to the foundation for her opinion. The undersigned also notes the
04 ALJ's failure to consider the symptoms of numbness and tingling identified on Dr. Minasian's May
05 2006 form. (AR 193.) Also, had the ALJ contacted Dr. Minasian for clarification of the
06 diagnostic techniques utilized, she could have inquired as to whether Dr. Minasian assessed any
07 limitations in association with the carpal tunnel syndrome diagnosis. As argued by plaintiff, such
08 limitations may well impact the ALJ's step five finding given that, based on the vocational expert's
09 testimony, the only job identified at that step could be precluded.

## **CONCLUSION**

For the reasons set forth above, this matter should be REMANDED for further administrative proceedings.

DATED this 26th day of February, 2008.

_____
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17